FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 16, 2024

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA M. M., | NO:  4:22-CV-5132-RMP |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR BENEFITS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff Lisa M. M.[1], ECF No. 10, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 14.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").  *See* ECF No. 10 at 2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and middle and last initials.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR BENEFITS ~ 1

Having reviewed Plaintiff's Opening Brief, ECF No. 10; the Commissioner's Brief, ECF No. 14; Plaintiff's reply, ECF No. 15; the relevant law; and the administrative record; the Court is fully informed.  For the reasons set forth below, the Court grants judgment for Plaintiff, reverses the Commissioner's final decision, and remands the matter for a finding of disability under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

### *General Context*

Plaintiff applied for DIB on approximately January 29, 2020, alleging an onset date of March 2, 2019.  *See* Administrative Record ("AR")[2] 77.  Plaintiff was 53 years old on the alleged disability onset date and asserted that she was unable to work due to a right knee injury, chronic kidney disease, type 2 diabetes, depression, anxiety, cervical radiculopathy, cervical degenerative disc disease, osteoarthritis, neuropathy, and herniated nucleus pulposus of cervical region.  AR 77–78. Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 129–30.

On October 6, 2021, Administrative Law Judge ("ALJ") Mark Kim held a telephonic hearing from Spokane, Washington.  AR 50–52.  Plaintiff was present

---

[2] The Administrative Record is filed at ECF No. 8.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR BENEFITS ~ 2

and represented by attorney Kathryn Higgs.  AR 50–52.  ALJ Kim heard testimony

from Plaintiff and vocational expert ("VE") Sharon Welter.  AR 50–52.

### ALJ's Decision

Applying the five-step evaluation process, ALJ Kim found:

**Step one:** Plaintiff meets the insured status requirements of the Act through

September 30, 2024.  AR 19.  Plaintiff did not engage in substantial gainful activity

since her alleged onset date of March 2, 2019.  AR 19 (citing 20 C.F.R. § 404.1571

*et seq.*).

**Step two:** Plaintiff has the following severe impairments that are medically

determinable and significantly limit her ability to perform basic work activities: right

knee osteoarthritis, cervical spine degenerative disc disease, diabetic mellitus,

chronic kidney disease, and morbid obesity, pursuant to 20 C.F.R. §§ 404.1520(c).

AR 19.  The ALJ further found that the following impairments are non-severe in that

they do not cause more than minimal effects on Plaintiff's ability to engage in basic

work activities: adjustment disorder, depression, and anxiety.  AR 19.  The ALJ

discussed and cited to various portions of the record before noting that "the evidence

in this case fails to establish significant mental health limitations."  AR 19.

**Step three:** The ALJ concluded that since March 2, 2019, Plaintiff has not

had an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1   1.  AR 19–20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  The ALJ

2   memorialized that he considered Plaintiff's physical impairments about listings 1.00

3   (musculoskeletal disorders), 6.00 (genitourinary disorders), and any relevant Social

4   Security Rulings ("SSRs"), and found that the evidence does not satisfy the criteria

5   of any listing.  Specifically, the ALJ discussed, with citations to the record,

6   Plaintiff's cervical skeletal spine disorder under the criteria of listing 1.15 (disorders

7   of the skeletal spine resulting in compromise of a nerve root(s)); Plaintiff's lumbar

8   spinal stenosis under the criteria of listing 1.16 (lumbar spinal stenosis resulting in

9   compromise of the cauda equina); Plaintiff's right knee osteoarthritis under the

10   criteria of listing 1.18 (abnormality of a major joint(s) in any extremity); and

11   Plaintiff's chronic kidney disease under section 6.00 (genitourinary disorders).  AR

12   20–21.  The ALJ further specified that he considered Plaintiff's obesity under SSR

13   19-2p and concluded that Plaintiff's functional limitations caused by the medically

14   determinable impairment of obesity, alone or in combination with another

15   impairment, do not medically equal a listing.  AR 21.  Nonetheless, the ALJ

16   acknowledged that Plaintiff's weight has affected Plaintiff's ability to perform

17   certain work functions and memorialized that he "considered those limitations when

18   determining her residual functional capacity below."  AR 21.

19       **Residual Functional Capacity ("RFC"):**  The ALJ found that, since March 2,

20   2019, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §

21

404.1567(b), with certain exceptions.  AR 21–22.  The ALJ restricted Plaintiff's

RFC as follows:

> [Plaintiff] can stand and/or walk for thirty minutes at one time. She
> must avoid crawling, or climbing ladders, ropes, or scaffolds. The
> claimant can occasionally balance, stoop, and kneel. The claimant can
> less than occasionally (5% of the workday or less) crouch or climb
> stairs. She must avoid extreme cold, excessive vibrations, and
> unprotected heights. Because of the effects from her medication, the
> claimant is limited to performing simple, routine tasks with a Specific
> Vocational Preparation of 2 or less.

AR 21.

In determining Plaintiff's RFC, the ALJ found that "the claimant's medically

determinable impairments could reasonably be expected to cause the alleged

symptoms; however, prior to the established onset date of disability, the claimant's

statements concerning the intensity, persistence and limiting effects of these

symptoms are not fully supported for the reasons explained in this decision.

Although the claimant has received treatment for multiple severe impairments, the

evidence fails to establish that she was unable to engage in work activities on a

sustained basis prior to February 21, 2021."  AR 22.

**Step four:** The ALJ found that, since March 2, 2019, Plaintiff has been unable

to perform any past relevant work.  AR 26 (citing 20 C.F.R. § 404.1565).

**Step five:** The ALJ found that Plaintiff has at least a high school education;

prior to the established disability onset date, Plaintiff was an individual closely

approaching advanced age; in February 2021, Plaintiff's age category changed to an

individual of advanced age; prior to February 2021, transferability of job skills is not material to the determination of disability because Plaintiff is "not disabled" under the Medical-Vocational Rules, whether or not Plaintiff has transferable job skills; and beginning in February 2021, Plaintiff has not been able to transfer job skills to other occupations. AR 27 (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). The ALJ found that, prior to February 2021, the date on which Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. AR 27. Specifically, the ALJ recounted that the VE identified the following representative occupations that Plaintiff could perform with the RFC: parking lot attendant (light, unskilled, with around 36,000 jobs nationally); office helper (light, unskilled work, with around 10,000 jobs nationally); and mail clerk (light, unskilled work with around 12,000 jobs nationally). AR 28. However, beginning in February 2021, on the date that Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 28 (citing 20 C.F.R. § 404.1560(c) and 404.1566). The ALJ concluded that Plaintiff was not disabled prior to February 2021, but became disabled in that month and has continued to be disabled through the date of the ALJ's decision. AR 28. The ALJ further found that

1 | Plaintiff's disability is expected to last twelve months past the onset date.  AR 28

2 | (citing 20 C.F.R. § 404.1520(g)).

3 |      Through counsel, Plaintiff sought in this Court review of the unfavorable

4 | decision.  ECF No. 1.

**LEGAL STANDARD**

6 | ***Standard of Review***

7 |      Congress has provided a limited scope of judicial review of the

8 | Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

9 | Commissioner's denial of benefits only if the ALJ's determination was based on

10 | legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

11 | 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

12 | determination that a claimant is not disabled will be upheld if the findings of fact are

13 | supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

14 | 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

15 | scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

16 | 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

17 | 1989).  Substantial evidence "means such evidence as a reasonable mind might

18 | accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389,

19 | 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

20 | [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

21 |

1   *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the

2   record, not just the evidence supporting the decisions of the Commissioner.

3   *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

4          A decision supported by substantial evidence still will be set aside if the

5   proper legal standards were not applied in weighing the evidence and making a

6   decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

7   1988). Thus, if there is substantial evidence to support the administrative findings,

8   or if there is conflicting evidence that will support a finding of either disability or

9   nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*,

10  812 F.2d 1226, 1229–30 (9th Cir. 1987).

11         ***Definition of Disability***

12         The Social Security Act defines "disability" as the "inability to engage in any

13  substantial gainful activity by reason of any medically determinable physical or

14  mental impairment which can be expected to result in death, or which has lasted or

15  can be expected to last for a continuous period of not less than 12 months." 42

16  U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to

17  be under a disability only if the impairments are of such severity that the claimant is

18  not only unable to do their previous work, but cannot, considering the claimant's

19  age, education, and work experiences, engage in any other substantial gainful work

20  which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Thus, the

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
BENEFITS ~ 8

1    definition of disability consists of both medical and vocational components. *Edlund*

2    *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

3    ***Sequential Evaluation Process***

4           The Commissioner has established a five-step sequential evaluation process

5    for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  Step one

6    determines if they are engaged in substantial gainful activities.  If the claimant is

7    engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §

8    404.1520(a)(4)(i).

9           If the claimant is not engaged in substantial gainful activities, the decision

10   maker proceeds to step two and determines whether the claimant has a medically

11   severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).

12   If the claimant does not have a severe impairment or combination of impairments,

13   the disability claim is denied.

14          If the impairment is severe, the evaluation proceeds to the third step, which

15   compares the claimant's impairment with listed impairments acknowledged by the

16   Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §

17   404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment

18   meets or equals one of the listed impairments, the claimant is conclusively presumed

19   to be disabled.

20

21

1    If the impairment is not one conclusively presumed to be disabling, the

2  evaluation proceeds to the fourth step, which determines whether the impairment

3  prevents the claimant from performing work that they have performed in the past.  If

4  the claimant can perform their previous work, the claimant is not disabled.  20

5  C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is

6  considered.

7    If the claimant cannot perform this work, the fifth and final step in the process

8  determines whether the claimant is able to perform other work in the national

9  economy considering their RFC and age, education, and past work experience.  20

10  C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

11    The initial burden of proof rests upon the claimant to establish a prima facie

12  case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

13  Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

14  is met once the claimant establishes that a physical or mental impairment prevents

15  them from engaging in their previous occupation.  *Meanel*, 172 F.3d at 1113.  The

16  burden then shifts, at step five, to the Commissioner to show that (1) the claimant

17  can perform other substantial gainful activity, and (2) a "significant number of jobs

18  exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722

19  F.2d 1496, 1498 (9th Cir. 1984).

20  / / /

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
BENEFITS ~ 10

**ISSUES ON APPEAL**

Plaintiff raises the following issues regarding the ALJ's decision:

1.     Did the ALJ erroneously reject Plaintiff's subjective complaints?

2.     Did the ALJ erroneously evaluate the medical source opinions of Plaintiff's treating and examining doctors?

3.     Did the ALJ err at step five by failing to conduct an adequate analysis?

***Plaintiff's Subjective Complaints***

Plaintiff argues that the ALJ failed to make sufficiently specific findings in rejecting Plaintiff's testimony, and "[e]ven the vague statement provided by the ALJ about conservative treatment and 'some' functional limitations is incorrect." ECF No. 10 at 8. Plaintiff argues that although surgery for both of Plaintiff's knees "was recommended very early on in the case," the agency processing Plaintiff's worker's compensation claim "first required that Physical Therapy options be exhausted before even proper imaging studies would be authorized." *Id.* at 8 (citing AR 899, 903, 905, 906, 911, 912, and 413). Plaintiff further argues that the subsequent imaging studies "support the severity of her condition" and that Plaintiff could not get the recommended surgery until she was able to lose weight. *Id.* at 8–9 (citing AR 385, 895, 891, and 903). Plaintiff continues by arguing that the ALJ does not explain or cite sufficient evidence for finding Plaintiff's activities inconsistent with her claimed limitations. *Id.* at 9. Plaintiff asserts that the ALJ does not indicate how Plaintiff's ability to wash dishes, crochet, tidy her room, and do her own laundry is

1    inconsistent with Plaintiff's statements that she is unable to stand for more than two

2    hours in an eight-hour day, when several records and Plaintiff's provider's medical

3    opinions corroborate that limitation.  *Id.* (citing AR 380, 401, 410, and 889).

4    Plaintiff further points out that she engages in only seated hobbies and takes

5    medications that "make her lethargic and make it difficult for her to focus, meaning

6    that the ALJ should have also included off-task behavior." *Id.* at 10 (citing AR 61,

7    317).  Plaintiff posits that the ALJ should have given Plaintiff's testimony greater

8    weight and relied on it to include the portion of work time that Plaintiff would be off

9    task and should have found Plaintiff incapable of performing sedentary work. *Id.* at

10   10.

11          The Commissioner responds that the ALJ reasonably found that "although

12   Plaintiff received treatment for multiple severe impairments, the evidence failed to

13   establish that she was unable to engage in work activities on a sustained basis" prior

14   to February 2021.  ECF No. 14 at 4 (citing AR 22).  The Commissioner continues

15   that substantial evidence supports the ALJ's finding that Plaintiff's subjective

16   allegations were inconsistent with the limited treatment that Plaintiff received for her

17   impairments. *Id.* (citing AR 22; 20 C.F.R. § 404.1529).  The Commissioner further

18   contends that Plaintiff's testimony is undermined by evidence of non-compliance

19   with treatment, Plaintiff's response to treatment, and Plaintiff's abilities. *Id.*

20

21

1    In deciding whether to accept a claimant's subjective pain or symptom

2    testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

3    1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has

4    presented objective medical evidence of an underlying impairment 'which could

5    reasonably be expected to produce the pain or other symptoms alleged.'"

6    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

7    *Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there

8    is no evidence of malingering, "the ALJ can reject the claimant's testimony about

9    the severity of [his] symptoms only by offering specific, clear and convincing

10    reasons for doing so." *Smolen*, 80 F.3d at 1281.

11    There is no allegation of malingering in this case. *See* ECF No. 15 at 2.

12    Plaintiff alleged the following impairments, as summarized in the ALJ's decision:

13
14    The claimant in this case alleges a combination of severe impairments
       have significantly affected her ability to engage in work activities on a
       sustained basis. In particular, the claimant testified that her right knee
15    gives out often and she experiences a pinched nerve sensation in her
       neck that transfers down through her bilateral upper extremities. In
       addition, she described neuropathic issues in her extremities. She also
16    reported frequently feeling dizzy, fatigued[,] and tired due to a
       combination of her medications, noting that she was presently taking
17    nine different medications for the combination of her impairments.

18    AR 22.

19    The ALJ found that the record showed that Plaintiff underwent three

20    arthroscopic procedures in her right knee prior to the alleged onset date; she reported

21

pain and swelling in the knee joints and weakness/numbness in the lower extremity; her doctor advised that she undergo a right knee replacement; and in August 2021 Plaintiff underwent another right knee arthroscopy, at which time the provider noted that a knee replacement was planned; and the knee replacement had not happened by the date of the hearing.  AR 22 (citing AR 357, 380, 540, 555, 557, 561, 702, 755, 856, 913, and 1006).  The ALJ further found that Plaintiff did not consistently use an assistive device to ambulate and is independent in her daily living activities and light household chores.  AR 22 (citing AR 702, 870, and 911).  The ALJ found that Plaintiff once endorsed an improvement in her knee condition from cortisone injections to the extent that she was able to ambulate independently.  AR 23 (citing AR 697).  The ALJ also found that Plaintiff had reported fatigue, memory loss, and nausea as side effects from the multiple medications that she takes daily.  AR 23 (citing AR 320).

With respect to degenerative disease in Plaintiff's cervical spine, the ALJ noted that Plaintiff has not required any surgical intervention for her neck impairment; has exhibited normal range of motion in her neck and shoulders during some of her medical assessments; and has "been able to tend to her daily living activities independently."  AR 23 (citing AR 528, 531, 789, 645–51, 772–73, and 846).  In considering Plaintiff's stage three kidney disease, the ALJ noted that Plaintiff denied urinary symptoms such as blood in her urine, increased frequency,

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR BENEFITS ~ 14

or burning and did not require dialysis or transplant, and Plaintiff's treating sources found that the condition likely was "exacerbated by her hypertension, use of NSAIDS and diabetes." AR 23 (citing AR 758, 1006, and 1011). Lastly, the ALJ found that "the evidence fails to establish significant limitations associated with her weight, and no evidence of aggressive treatment such as gastric bypass or bariatric surgery suggested by a medical provider." AR 23 (citing AR 405–97, 1014). Moreover, the ALJ noted that Plaintiff's weight was described as stable, and that "notwithstanding a modified diet as part of her treatment to lose weight, Plaintiff's obesity does not significantly affect her physical functionality." AR 23 (citing AR 1014).

Plaintiff argues that the ALJ should have included off-task behavior in Plaintiff's RFC to account for her medication side effects, including fatigue, memory loss, and nausea. ECF No. 10 at 10. However, the ALJ did account for medication side effects in finding: "At most, the claimant endorses fatigue, a side effect of her multiple medications, which reasonably would limit her to simple tasks." AR 24. Plaintiff provides no authority to support that a different or greater limitation was warranted, and does not mention the issue in her reply. *See* ECF Nos. 10 at 10; 15 at 1–4.

However, Plaintiff's argument that the ALJ failed to consider why Plaintiff's knee impairment was treated conservatively is well founded. The ALJ cited to a

1    record in which Plaintiff reported some improvement following a cortisone injection

2    and indicated that she could ambulate without a cane.  *See* AR 23 (citing AR 697).

3    The ALJ further noted that Plaintiff does not consistently "ambulate with the use of

4    an assistive device[.]"  AR 22 (citing AR 755, 913).   Nonetheless, as the ALJ

5    acknowledged, Plaintiff's comprehensive medical record shows that Plaintiff's

6    treatment provider found knee replacement surgery warranted during the relevant

7    timeframe, while also finding that Plaintiff needed to lose weight before surgery

8    could occur.  *See* AR 22 (ALJ noting that a knee replacement surgery was planned

9    but had not yet occurred); AR 413, 899, 902–03, 905–06, and 911–12.  The record

10   also consistently indicates that Plaintiff's surgery as well as pre-surgery imaging

11   were subject to authorization by the Washington State Department of Labor and

12   Industries ("L&I").  AR 899, 903–06, and 911–12.  The Commissioner counters that

13   "it is undisputed that Plaintiff did, in fact, receive non-surgical medical care."  ECF

14   No. 14 at 7 (citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (conservative

15   treatment supports ALJ's findings with respect to subjective complaints)).

16         Even assuming that a cortisone injection and multiple arthroscopies can be

17   considered conservative treatment, an ALJ may rely on conservative treatment to

18   discount a claimant's testimony only after he has considered why the claimant did

19   not pursue more aggressive treatment.  *See* SSR 16-3p, 2016 SSR LEXIS 4 ("We

20   will not find an individual's symptoms inconsistent with the evidence in the record

21

on this basis without considering possible reasons why he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *Eitner v. Saul*, 835 F. App'x 932, 933 (9th Cir. 2021) (citing SSR 16-3p and finding that failure to pursue more aggressive treatment was not a clear and convincing reason to reject plaintiff's testimony because the ALJ did not consider why the claimant did not seek or obtain treatment); *Nestor S. v. Kijakazi*, Case No. 3:23-cv-1845-JSC, 2023 U.S. Dist. LEXIS 205836, *9 ((Nov. 16, 2023) (finding error where Plaintiff's reason for not obtaining more aggressive treatment such as surgery was that he first needed to lose weight).  The ALJ did not address why Plaintiff's treatment still undermined her subjective symptom testimony when she had not received more aggressive treatment because she required L&I approval for surgery and needed to lose weight to undergo the procedure.  AR 21–23.  The ALJ erred by failing to analyze or consider Plaintiff's reasons for not pursuing more aggressive treatment.

The ALJ further discounted Plaintiff's complaints based on Plaintiff's independent performance of her daily living activities and light household chores, as well as her "daily hobbies consist[ing] of painting and crocheting[.]"  AR 22–23.  Daily activities may suffice to discredit a claimant's symptom allegations where the ALJ makes a "specific finding" that the claimant "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that

are transferable to a work setting[.]" *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal quotation omitted).  The ALJ did not articulate how washing her own dishes, doing her own laundry, lightly cleaning her room, and crocheting are inconsistent with Plaintiff's alleged symptoms or translate to full-time light work with the additional limitations that the ALJ identified.  *See* AR 21–23; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a person need not be "utterly incapacitated" to be disabled).

The Court finds that the ALJ did not provide clear and convincing reasons for discrediting Plaintiff's subjective symptom allegations.  *See Smolen*, 80 F.3d at 1281.

### *Medical Source Opinions*

Plaintiff argues that the ALJ erred in his treatment of the state agency consulting examiners' opinions and that the ALJ did not have any medical opinions to support his formulation of Plaintiff's RFC.  ECF No. 15 at 5.

The Commissioner responds that the ALJ "properly considered the medical opinions of the State non-examining consultants and found such opinions properly persuasive."  ECF No. 14 at 10 (citing AR 25–26).

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence and require the ALJ to articulate how persuasive he finds all medical opinions in the record, without any

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR BENEFITS ~ 18

1    hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the

2    Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18,

3    2017).  Instead, for each source of a medical opinion, the ALJ must consider several

4    factors, including supportability, consistency, the source's relationship with the

5    claimant, any specialization of the source, and other factors such as the source's

6    familiarity with other evidence in the claim or an understanding of Social Security's

7    disability program.  20 C.F.R. § 404.1520c(c)(1)-(5).

8        Supportability and consistency are the "most important" factors, and the ALJ

9    must articulate how she considered those factors in determining the persuasiveness

10   of each medical opinion or prior administrative medical finding.  20 C.F.R. §

11   404.1520c(b)(2).  With respect to these two factors, the regulations provide that an

12   opinion is more persuasive in relation to how "relevant the objective medical

13   evidence and supporting explanations presented" and how "consistent" with

14   evidence from other sources the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).

15   The ALJ may explain how she considered the other factors, but is not required to do

16   so, except in cases where two or more opinions are equally well-supported and

17   consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).  Courts also must

18   continue to consider whether the ALJ's finding is supported by substantial evidence.

19   *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to

20   any fact, if supported by substantial evidence, shall be conclusive . . . .").

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
BENEFITS ~ 19

Prior to revision of the regulations, the Ninth Circuit required an ALJ to provide clear and convincing reasons to reject an uncontradicted treating or examining physician's opinion and provide specific and legitimate reasons where the record contains a contradictory opinion. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). However, the Ninth Circuit has held that the Social Security regulations revised in March 2017 are "clearly irreconcilable with [past Ninth Circuit] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22, 2022). The Ninth Circuit continued that the "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations." *Id*. at *15 (internal citation omitted). Recently, the Ninth Circuit has further held that the updated regulations comply with both the Social Security Act and the Administrative Procedure Act, despite not requiring the ALJ to articulate how he or she accounts for the "examining relationship" or "specialization factors. *Cross v. O'Malley*, No. 23-35096, 2024 U.S. App. LEXIS 302 at *7–12 (9th Cir. Jan. 5, 2024).

1    Accordingly, as Plaintiff's claim was filed after the new regulations took

2    effect, the Court refers to the standard and considerations set forth by the revised

3    rules for evaluating medical evidence. *See* AR 77.

4    The ALJ memorialized that he evaluated "the opinion evidence of the State

5    non-examining consultants at the initial and reconsideration levels of determination"

6    and found their opinions only partially persuasive. AR 25–26. The ALJ found that

7    the state non-examining consultants' opinions that Plaintiff is limited to walking no

8    more than two hours in an eight-hour workday are "not supported by the evidence at

9    large" and that "[t]here is no evidence that the claimant is unable to stand for longer

10   than two hours at a time." AR 25. The ALJ further reasons that the evidence does

11   not show that Plaintiff has consistently relied on an ambulatory device for mobility

12   or balance and "prior to the established onset date, the claimant also showed signs of

13   improvement following the steroidal injections she received on her knee." AR 26

14   (citing AR 697).

15   The Commissioner contends that Plaintiff invades the province of the ALJ by

16   assessing whether the relevant medical opinions are supported by the record. ECF

17   No. 14 at 11. However, even under the revised framework for evaluating medical

18   source opinions, *see* 42 U.S.C. § 405(g), the ALJ's assessment must be supported by

19   substantial evidence, and the ALJ's reasoning that there is "no evidence" that

20   Plaintiff cannot stand or walk for more than two hours per workday does not satisfy

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
BENEFITS ~ 21

1    this requirement.  The ALJ does not cite to records demonstrating the Plaintiff's

2    daily activities required her to stand or walk for more than two hours in a day.

3    Moreover, the ALJ does not acknowledge that one of the medical sources at issue

4    reviewed medical records that showed that imaging showed degeneration and

5    meniscus tears in Plaintiff's knee, that Plaintiff's providers have found that she

6    needs knee replacement surgery, that Plaintiff is morbidly obese, and that Plaintiff

7    has moderate degenerative disc disease in her cervical spine.  AR 104–07.  Based on

8    the ALJ's conclusory reasoning, which appears inconsistent with Plaintiff's

9    longitudinal record and the content of the opinions at issue, the Court finds that the

10   ALJ did not fulfill his obligation to consider the supportability and consistency of

11   the state non-examining consultants' opinions and, therefore, erred.

12           Having found that the ALJ erroneously evaluated both Plaintiff's subjective

13   symptom testimony and the challenged medical source opinions, both of which

14   could have supported greater restrictions, the hypothetical posed to the VE for

15   purposes of step five also was flawed.  Therefore, the Court proceeds to consider the

16   appropriate remedy.

17           Whether to reverse and remand for further proceedings or to calculate and

18   award benefits is a decision within the discretion of the district court.  *See Harman*

19   *v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Smolen*, 80 F.3d at 1292.  Remand for

20   further proceedings is appropriate when developing the record would be useful.  *See*

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR BENEFITS ~ 22

1   *Smolen*, 80 F.3d at 1292.  However, when further development of the record is

2   unneeded, remand to calculate and award benefits may be warranted.  *See id.*  The

3   Ninth Circuit has endorsed remand for calculation of benefits where:

4         (1) the ALJ has failed to provide legally sufficient reasons for
    rejecting [the claimant's] evidence, (2) there are no outstanding

5         issues that must be resolved before a determination of disability can
    be made, and (3) it is clear from the record that the ALJ would be

6         required to find the claimant disabled were such evidence credited.

7   *Smolen*, 80 F.3d at 1292.

8         Plaintiff argues that remand for benefits is appropriate because, had the state

9   non-examining consultants' opinions been credited, Plaintiff would have been

10  limited to sedentary work and found disabled under the Medical Vocational Grid

11  Rules, specifically Rule 201.14.  ECF No. 10 at 10, 16.  The Commissioner responds

12  that Plaintiff "provides no support that she meets the stringent criteria" for the rare

13  remedy of reversal and award of benefits.  ECF No. 14 at 14.

14        The discounted subjective symptom testimony and medical source opinions, if

15  credited as true, would support that Plaintiff was limited to sedentary, rather than

16  light, work, as that evidence supported that Plaintiff cannot stand walk or stand to

17  the extent permitted for light work.  *See* 20 C.F.R. § 404.1567(a), (b); AR 56–61

18  (Plaintiff's testimony that she sits for many of her daily activities and can stand for

19  only fifteen to twenty minutes at a time); AR 85 (state non-examining consultant's

20  opinion that Plaintiff must sit for about six hours in a normal workday and is limited

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR
BENEFITS ~ 23

to sedentary work).  Footnote 3 to Medical Vocational Grid Rule 201.12 provides that "[i]ndividuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g).  The ALJ found that Plaintiff was incapable of her past relevant sedentary work.  AR 26.  The Commissioner does not set forth, and the Court does not find, any necessity to remand for further development of the record.  Accordingly, the Court finds that the criteria for remanding for calculation of benefits is the appropriate remedy.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision contains harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Brief, **ECF No. 10**, is **GRANTED**.

2.    Defendant the Commissioner's Brief, **ECF No. 14**, is **DENIED**.

3.    The decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), for calculation and payment of benefits.

4.    Judgment shall be entered for Plaintiff.

5.      The District Court Clerk shall amend the docket in this matter to substitute Martin O'Malley as the Commissioner of the Social Security Administration.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** February 16, 2024.

                                     *s/ Rosanna Malouf Peterson*
                                     ROSANNA MALOUF PETERSON
                                     Senior United States District Judge